## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM J. JOHANSEN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 17-452-MN-SRF |
| | ) |
| AIR & LIQUID SYSTEMS | ) |
| CORPORATION et al | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

Presently before the court in this asbestos-related personal injury action are the motions

for summary judgment of fourteen defendants, Air & Liquid Systems Corporation[1] ("Air &

Liquid") (D.I. 161), Anchor/Darling Valve Company ("Anchor Darling") (D.I. 151), Atwood &

Morrill Co.[2] ("Atwood") (D.I. 165), Armstrong International, Inc. ("Armstrong") (D.I. 138),

Crosby Valve LLC ("Crosby") (D.I. 143), Flowserve U.S., Inc.[3] ("Flowserve") (D.I. 154), FMC

Corporation[4] ("FMC") (D.I. 149), Gardner Denver, Inc. ("Gardner Denver") (D.I. 141), Jenkins

---

[1] Air & Liquid Systems Corporation is a successor by merger to Buffalo Pumps, Inc. (D.I. 162 at 1) Air & Liquid claims it was originally sued incorrectly "individually and as wholly-owned subsidiary of AMPCO-PITTSBURG CORPORATION." (D.I. 162 at 1; D.I. 1, Ex. 1 at ¶ 8)
[2] Atwood & Morrill was acquired by Weir. (D.I. 166 at 5) Atwood claims it was originally sued incorrectly as "d/b/a WEIR VALVES & CONTROLS USA, INC." (D.I. 166 at 1; D.I. 1, Ex. 1 at ¶ 8)
[3] Flowserve U.S., Inc. is a successor to Edward Vogt Valve Company, Vogt Valve Co., Nordstrom Valves, Inc., Edward Valves, Inc., and Rockwell Manufacturing Company. (D.I. 155 at 1)
[4] FMC is a successor through acquisition of Northern Pump Company, Chicago Pump Company, and Peerless Pump Company. (D.I. 1, Ex. 1 at ¶ 8)

contained asbestos. (*Id.* at 60:8-21) In total, Mr. Johansen worked on approximately twelve valves at Cubi Point, but cannot recall where they were located within the liquid oxygen plant or the specific manufacturers of the valves he encountered there. (*Id.* at 61:13-20, 62:7-23) Mr. Johansen also cannot recall the frequency with which he repaired valves nor could he describe identifying features of the pumps. (*Id.*, Ex. B at 74:2-12, 80:20-25) He left the Cubi Point liquid oxygen plant in December 1964. (*Id.* at 83:1-3)

Following his work at Cubi Point, Mr. Johansen then served as a machinist mate aboard the *USS Valley Forge*, a helicopter carrier. (*Id.*, Ex. A at 65:9-20) His duties aboard the *USS Valley Forge* were similar to those at Cubi Point – operating and repairing hydraulic pumps and evaporators. (*Id.* at 66:4-17) Mr. Johansen does not believe his work with hydraulic pumps contributed to his asbestos exposure, but believes he was exposed to asbestos when he worked on evaporators. (*Id.* at 68:15-25) When working on evaporators, Mr. Johansen would "remove a lot of insulation to get to the flanges to remove the . . . pipes out of the evaporator." (*Id.* at 69:1-8) After removing this insulation, Mr. Johansen would conduct the same gasket replacement and packing removal process that he practiced at Cubi Point, and, thus, believes he was similarly exposed to asbestos. (*Id.* at 74:9-75:4, 75:25-76:8, 77:4-20) Furthermore, he testified that he had to occasionally change steam traps by unbolting them, removing the insulation, and installing new steam traps. (D.I. 139, Ex. B at 114:23-116:8) Mr. Johansen could not recall how many valves he had worked on while serving on the *USS Valley Forge*, how many valves were aboard the ship, or the specific manufacturers of valves aboard the *USS Valley Forge*. (D.I. 155, Ex. A at 77:21-78:2, 83:14-21, 83:24-85:6)

After his honorable discharge in 1966, Mr. Johansen worked in a pulp mill in Alaska for approximately nine months before working as a deck hand for tugboats. (*Id.* at 100:25-101:22,

5

103:1-16) He later started work at Todd Shipyard as a journeyman pipefitter, installing piping systems on ships and repairing piping and valves. (*Id.* at 103:19-104:20) This work mirrored the same processes of removing insulation, replacing gaskets, and replacing packing that he conducted while serving in the Navy. (*Id.* at 107:6-108:15) Mr. Johansen believes this exposure to the insulation, gaskets, and packing constituted exposure to asbestos. (*Id.* at 109:8-13) Mr. Johansen also expanded his responsibilities at Todd Shipyard to installing piping systems and valves. (*Id.* at 112:11-19) While he did not personally install the insulation on the pipes, Mr. Johansen was occasionally present when individuals mixed a powdered material before applying the mixture to the pipes (*Id.* at 113:1-6, 114:3-13) Mr. Johansen believes that this material contained asbestos and he was therefore exposed when he helped install piping systems. (*Id.* at 114:10-16) Mr. Johansen could not identify how many times he removed or installed new packing, the brand name or manufacturer of the packing he removed, or the brand name or manufacturer of the piping he installed. (*Id.*, Ex. B at 133:20-134:4)

After working at Todd Shipyard, Mr. Johansen worked on a tugboat in Everrett, Washington for about seven months. (*Id.*, Ex. A at 117:14-25) He then worked as a journeyman pipefitter at Lockheed Shipyard for approximately three or four months. (*Id.* at 118:8-21) At Lockheed Shipyard, Mr. Johansen installed new piping on Navy ships. (*Id.* at 119:8-14) Again, Mr. Johansen did not install the insulation, but was present when others did, and the same powdered material and mixture were used. (*Id.* at 119:18-120:7) Mr. Johansen also could not recall a specific brand or manufacturer of the pumps, valves, gaskets, or packing that he worked with while working at Lockheed Shipyard. (*Id.*, Ex. B at 142:20-143:8)

Mr. Johansen was diagnosed with mesothelioma in December 2016. (D.I. 157, Ex. B at 145:8-11)

6

## 2. Plaintiff's product identification evidence

Plaintiff is the sole product identification witness in this case and his deposition occurred on March 14 and 15, 2017. (D.I. 135) A supplemental deposition occurred on July 11, 2018. (*Id.*)

### a. Air & Liquid System Corporation

Mr. Johansen identified Buffalo Pumps as one of several manufacturers of pumps he encountered during his career, both during his service in the Navy and in his subsequent employment. (D.I. 162, Ex. A at 95:3-17) Mr. Johansen was unable to identify specifically which employer or in which locations he encountered Buffalo pumps. (*Id.*, Ex. B at 221:2-12) He also could not speak to the maintenance history of the pumps. (*Id.* at 208:10-18) Finally, Mr. Johansen could not recall a specific operating temperature for any pumps, the size of any specific brand of pump, or the orientation (horizontal or vertical) of any pumps. (*Id.* at 218:10-219:6)

### b. Anchor/Darling Valve Company

Mr. Johansen did not identify any asbestos-containing Anchor Darling products or exposure to any Anchor Darling products. (D.I. 152 at 1-2, 4)

### c. Atwood & Morrill Co.

Mr. Johansen named Weir in his original deposition as one of several manufacturers of valves he encountered. (D.I. 166, Ex. B at 63:4-9, 84:13-85:6) Mr. Johansen was unable to place Weir valves at a specific jobsite or with a specific employer. (*Id.* at Ex. E at 10:20-23) He could not provide model numbers or serial numbers for Weir valves. (*Id.* at 10:24-11:5) Mr. Johansen also could not describe the color, material, dimensions, weight, type, maintenance history, or age of Weir valves. (*Id.* at 11:6-24, 12:16-23) He was also unable to provide information as to whether he worked with Weir valves more than valves made by other

7

manufacturers. (*Id.*, Ex. D at 191:6-10) Finally, Mr. Johansen could not recall the substance that flowed through Weir valves or what work he specifically did on these valves. (*Id.*, Ex. E at 11:25-12:5, 12:24-13:7)

Mr. Johansen testified regarding Atwood valves separately at his supplemental deposition. He was unable to recount the frequency with which he was exposed to Atwood valves or where he had seen Atwood valves. (*Id.* at 22:18-22, 28:21-25). Mr. Johansen could not describe the color, dimensions, maintenance history, type, or age of Atwood valves. (*Id.* at 29:1-14, 32:8-14) Finally, Mr. Johansen could not remember what substance flowed through Atwood valves. (*Id.* at 32:5-7)

### d. Armstrong International, Inc.

Mr. Johansen indicated that he changed steam traps while serving aboard the *USS Valley Forge*, and noted that he replaced them approximately two or three times. (D.I. 139, Ex. B at 191:22-25) He named Armstrong as the manufacturer of the steam traps on which he performed the work he described. (*Id.* at 117:9-12) Mr. Johansen recalled that steam traps came in various sizes, but was unable to describe the different types of steam traps. (*Id.* at 116:24-117:8)

### e. Crosby Valve LLC

Mr. Johansen identified Crosby as one of several manufacturers of valves he encountered during his career. (D.I. 144, Ex. B at 63:4-9, 83:24-85:6) However, he could not recount the maintenance history of those valves. (*Id.*, Ex. A at 195:7-10) Mr. Johansen could not provide details specific to Crosby valves, such as whether they were spring-loaded or had open-body valves. (*Id.* at 194:2-9) Rather, he noted that "the name was familiar." (*Id.* at 194:13-21)

### f. Flowserve U.S., Inc.

Mr. Johansen named Vogt among several manufacturers who made valves that he had

8

encountered throughout his career. (D.I. 155, Ex. A at 63:4-9, 83:24-85:6) However, he was unable to provide details as to where and when he worked with Vogt valves. (*Id.*, Ex. C at 227:10-15) Additionally, Mr. Johansen could not recall the maintenance history, age, size, type, or application of Vogt valves. (*Id.* at 227:25-228:15) He did not know the brand name or manufacturer of any of the gasket or packing material that he may have used in connection with a Vogt valve. (*Id.* at 228:16-229:1)

### g. FMC Corporation

Mr. Johansen recalled Chicago Pumps, along with several other manufacturers who made pumps that he encountered during his career. (D.I. 150, Ex. B at 79:4-12) He was unable to identify where he encountered a Chicago pump, describe what a Chicago pump looked like, recount the application of Chicago pumps, or recall specific work he performed on Chicago pumps. (*Id.*, Ex. C at 222:23-223:22) Additionally, Mr. Johansen was unable to testify as to whether Chicago pumps had flanges and could not recall how many times he encountered a Chicago pump. (*Id.* at 224:7-16) Instead, he testified that he could not "recall it specifically being a Chicago pump . . . just pumps in general." (*Id.* at 223:10-22)

### h. Gardner Denver, Inc.

Mr. Johansen identified Gardner Denver as one of several manufacturers of pumps he encountered. (D.I. 142, Ex. A at 95:3-17) He could not, however, identify where he encountered a Gardner Denver pump, what substance flowed through a Gardner Denver pump, or what work he did on a Gardner Denver pump. (*Id.*, Ex. B at 225:2-5, 225:11-14, 226:3-7) Mr. Johansen could not recount the number, maintenance history, type, model number, serial number, size, or color of Gardner Denver pumps to which he was exposed. (*Id.* at 225:6-10, 225:15-226:2, 226:8-11)

9

#### i. Jenkins Bros.

Jenkins Bros. was named as a valve manufacturer that Mr. Johansen encountered during his career. (D.I. 164, Ex. A at 62:16-63:13) Mr. Johansen could not describe the shape, size, model numbers, or substance that flowed through any manufacturer's valve. (*Id.*, Ex. B at 170:2-23) Additionally, he admitted that there was nothing that he could recall that distinguished Jenkins valves from other valves to which he was exposed. (*Id.* at 256:15-257:1)

#### j. Kunkle Industries, Inc.

Mr. Johansen identified Kunkle among several valve manufacturers he generally recalled during his career. (D.I. 148, Ex. B at 62:16-63:13) However, he could not recall any specific information regarding the size, shape, or location of any Kunkle valves he encountered. (*Id.*, Ex. A at 195:16-24)

#### k. Nash Engineering Holdings LLC

Nash was one of several pump manufacturers that Mr. Johansen testified he was exposed to during his career. (D.I. 168, Ex. A at 95:3-17) In his most recent deposition, Mr. Johansen was unable to describe where he had encountered a Nash pump. (*Id.*, Ex. D at 15:7-9) He could not recall a model number, serial number, color, material, dimensions, weight, type, age, or maintenance history of a Nash pump. (*Id.* at 15:10-16:4, 16:13-19) Mr. Johansen could not state what substance flowed through a Nash pump or characteristics identifying a Nash pump. (*Id.* at 16:5-12) Finally, Mr. Johansen could not remember what work he had specifically performed on Nash pumps. (*Id.* at 16:20-17:1)

#### l. Neles-Jamesbury, Inc.

Mr. Johansen identified Neles-Jamesbury as a manufacturer of valves he encountered. (D.I. 157, Ex. C at 78:2-79:7) Mr. Johansen could not recall a specific workplace where he

10

encountered valves manufactured by Neles-Jamesbury nor did he have a specific recollection of working on a Neles-Jamesbury valve. (*Id.*, Ex. D at 252:15-19, 255:10-16) He could not describe the material, size, or color of Neles-Jamesbury valves. (*Id.* at 253:14-23) Mr. Johansen could not specifically recall any distinguishing features of a Neles-Jamesbury valve. (*Id.* at 254:3-24) Finally, Mr. Johansen could not identify whether Neles-Jamesbury valves had a lever handle or a wheel handle. (*Id.* at 253:24-254:2)

## m. Red-White Valve Corp.

Mr. Johansen recognized Red-White as one of several manufacturers of valves he generally recalled. (D.I. 171, Ex. 1 at 78:2-79:7)

There was no testimony specific to Red-White apart from a generalized identification. (*Id.* at 169:19-170:1) Mr. Johansen admitted that he was unable to distinguish the valves on which he performed most of his work. (*Id.*) He was unable to describe the size, shape, model number, material, or substance that flowed through any particular valve. (*Id.* at 170:2-23)

## n. Warren Pumps, LLC

Mr. Johansen did not provide any deposition testimony specific to Warren. (*See* D.I. 160, Ex. A) Mr. Johansen included Warren generally among the group of pump manufacturers he recalled. (D.I. 160 at 2) He is unable to provide more specific testimony relating particular pumps to certain worksites nor can he provide descriptive features for any pumps he recalls. (*Id.*, Ex. A at 118:17-25, 142:20-25)

## III. LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

11

R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion of whether or not a fact is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be

12

granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex,* 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex,* 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3).[9] A plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review,* 922 F.2d 168, 175 (3d Cir. 1990). Even where a party does not file a responsive submission to oppose the motion, the court must still find that the undisputed facts warrant judgment as a matter of law. *Miller v. Ashcroft,* 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56; *Lorenzo v. Griffith,* 12 F.3d 23, 28 (3d Cir. 1993)). In other words, the court must still determine whether

---

[9] This section was added to Rule 56 to overcome cases in the Third Circuit that impaired the utility of the summary judgment device:

> A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue.

Fed. R. Civ. P. 56(e) advisory committee's note. Before the amendment, the Third Circuit would have denied summary judgment if the averments were "well-pleaded," and not conclusory. *Id.* However, the Advisory Committee noted that summary judgment is meant to pierce the pleadings and to assess proof to see whether there is a genuine need for trial. *Id.* Accordingly, the pre-amendment Third Circuit precedent was incompatible with the basic purpose of the rule. *Id.* The amendment recognizes that, "despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The amendment, however, was not designed to affect the ordinary standard applicable to summary judgment. *Id.*

the unopposed motion for summary judgment "has been properly made and supported." *Williams v. Murray, Inc.*, 2014 WL 3783878, at *2 (D.N.J. July 31, 2014) (quoting *Muskett v. Certegy Check Svcs., Inc.*, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010)).

## B. Maritime Law: Product Identification/Causation

The parties do not dispute that maritime law applies to all Naval/sea-based claims.[10] In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, "that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor[11] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x. 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and*

[10] For maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), the Supreme Court defined these tests as follows:

A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

513 U.S. at 534 (internal citations omitted).
[11] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

14

*recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at \*4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).[12]

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or Decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[13] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at \*1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. App'x. at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient [to establish causation]. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x. at 376) (internal citation omitted). "Rather, the plaintiff must show 'a high enough level of exposure that an

---

[12] Previously, courts in this Circuit recognized a third element and required a plaintiff to "show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged," *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at \*1 n.1 (E.D. Pa. Feb. 29, 2012), because the majority of federal courts have held that, under maritime law, a manufacturer has no liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute. This is also referred to as the "bare metal" defense. *See Dalton v. 3M Co.*, 2013 WL 4886658, at \*7 (D. Del. Sept. 12, 2013) (citing cases); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012). However, the Third Circuit rejected the bare metal defense, and held that a manufacturer of a "bare metal" product may be held liable for injuries sustained from later-added asbestos-containing materials, if the facts show that the plaintiff's injuries were a reasonably foreseeable result of the manufacturer's failure to provide a reasonable and adequate warning. *In re: Asbestos Prod. Liab. Litig. (Devries)*, 873 F.3d 232, 240 (3d Cir. 2017). This decision is currently under review by the Supreme Court of United States; on May 14, 2018, the Supreme Court granted the Petition for a Writ of Certiorari of the *Devries* decision. *See Air & Liquid Sys. Corp. v. Devries*, No. 17-1104, 2018 WL 753606 (U.S. May 14, 2018).

[13] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a substantial factor in causing the injury.'" *Stark*, 21 F. App'x. at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at \*4 (6th Cir. April 25, 1991)).

15

inference that the asbestos was a substantial factor in the injury is more than conjectural.'"

*Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. App'x. at 376 (citations omitted).

### C. Washington Law

The parties do not dispute that Washington law applies to all land-based claims. (D.I. 105) Under Washington law, a plaintiff asserting a claim for asbestos-related injuries must "establish a reasonable connection between the injury, the product causing the injury, and the manufacturer of that product. In order to have a cause of action, the plaintiff must identify the particular manufacturer of the product that caused the injury." *Lockwood v. AC & S, Inc.*, 744 P.2d 605, 612 (Wash. 1987) (citing *Martin v. Abbott Labs.*, 102 Wash. 2d 581, 590 (1984)). Washington law requires plaintiffs to establish that exposure to asbestos from a particular product was a "substantial factor" in causing the plaintiff's injuries. *See Barabin v. Albany Intern. Corp.*, 2009 WL 2578967, at *5-6 (W.D. Wash. Aug. 18, 2009); *Barabin v. AstenJohnson, Inc.*, 2010 WL 11613472, at *2-3 (W.D. Wash. Dec. 10, 2010). In identifying manufacturers, plaintiffs may rely on witness testimony, but the burden remains on the plaintiff to make this identification and establish a causal connection between the injury, product, and manufacturer of that product. *Lockwood*, 744 P.2d at 612-13. Courts should consider:

> the evidence of plaintiff's proximity to the asbestos product when the exposure occurred and the expanse of the work site where asbestos fibers were released. They should also take into account the extent of time that the plaintiff was exposed to the product. . . . Court should also consider the types of asbestos products to which the plaintiff was exposed and the ways in which such products were handled and used. In addition, trial courts must consider the evidence presented as to medical causation of the plaintiff's particular disease.

16

*Id.* at 613.

## IV. DISCUSSION

### A. Air & Liquid System Corporation

The court recommends granting Air & Liquid's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether an Air & Liquid product was a substantial factor in causing Mr. Johansen's injuries. Although Mr. Johansen was able to name Buffalo pumps in his deposition, he was unable to specifically identify which employer or on which jobsites he encountered Buffalo pumps. (D.I. 162, Ex. A at 95:12-17; Ex. B at 221:2-12) There is no mention within the record regarding the frequency with which Mr. Johansen was exposed to Buffalo pumps or whether Buffalo pumps were the most prevalent pumps in his line of work. (*See id.*, Ex. A; Ex. B) Mr. Johansen was unable to name the brand name or manufacturer of the packing or gaskets removed from pumps in general while he served in the Navy. (*Id.*, Ex. B at 214:3-7, 217:4-9) Plaintiff has failed to provide evidence that Air & Liquid's products were a substantial factor in causing Mr. Johansen's injuries, as required by maritime law. As such, the court recommends granting Air & Liquid's motion for summary judgment.

### B. Anchor/Darling Valve Company

The court recommends granting Anchor Darling's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether an Anchor Darling product was a substantial factor in causing Mr. Johansen's injuries. The plaintiff has failed to identify exposure to an Anchor Darling product in his testimony under oath. The lack of evidence in the record on product identification and nexus supports dismissal of the claims against Anchor Darling as a matter of law. Therefore, the court recommends granting Anchor

Darling's motion for summary judgment.

## C. Atwood & Morrill Co.

The court recommends granting Atwood's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Weir product was a substantial factor in causing Mr. Johansen's injuries. Mr. Johansen identified Weir as one of the manufacturers of valves he recalls in general. (D.I. 166, Ex. B at 63:4-9) However, Mr. Johansen was unable to provide details regarding where and how often he worked on or around Weir or Atwood valves. (*Id.*, Ex. E at 10:20-23; Ex. D at 191:6-10) Mr. Johansen could not recall the color, material, dimensions, weight, type, maintenance history, or age of these valves. (*Id.*, Ex. E at 11:6-24, 12:16-23)

Furthermore, when asked how, if at all, he was able to identify a Weir valves, Mr. Johansen testified:

Q:     Sir, how do you know that a valve was a Weir valve?

A:     Well, as I remember, the – all the equipment had some kind of name on it, the manufacturer name; saw it on them somehow.

Q:     Was it embossed into the Weir vales or was there a nameplate? Is there anything else you could tell me, any specifics you could tell me?

A:     No. I couldn't tell you on that, no.

(*Id.*, Ex. E at 12:6-15) Atwood has presented evidence that, prior to approximately 1990, it did not manufacture any valves with the word "Weir" on the valve and that any valves that were thereafter manufactured with the name "Weir" did not contain any asbestos-containing components. (*Id.*, Ex. F at 2)

With respect to Atwood valves, Mr. Johansen has similarly failed to provide evidence that Atwood valves were a substantial factor in causing his injuries. Mr. Johansen was unable to

18

recount how often he performed work on or around Atwood valves. (*Id.*, Ex. E at 28:21-25) He could not describe the color, dimensions, maintenance history, type, or age of Atwood valves. (*Id.* at 29:1-14, 32:5-14) Mr. Johansen could not remember the brand name or manufacturer of the gasket or packing material used in connection with Atwood valves. (*Id.* at 31:20-32:4)

Plaintiff has failed to provide evidence that Atwood's products were a substantial factor in causing his injuries, as required by maritime law and Washington law. Therefore, the court recommends granting Atwood's motion for summary judgment.

### D. Armstrong International, Inc.

The court recommends granting Armstrong's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether an Armstrong product was a substantial factor in causing Mr. Johansen's injuries. Mr. Johansen recounted his work with steam traps and named Armstrong as the manufacturer of steam traps he interacted with aboard the *USS Valley Forge*. (D.I. 139, Ex. B at 117:9-12) Mr. Johansen noted his work on steam traps was limited to a 20-month period aboard the *USS Valley Forge*. (*Id.* at 191:11-16) However, he noted that during that period, he only replaced steam traps approximately "two or three times." (*Id.* at 191:17-25) He replaced steam traps, but never repaired them. (*Id.* at 116:3-6) Mr. Johansen claims exposure related to flange gaskets and insulation, but the insulation was not provided by Armstrong. (D.I. 139 at 6; Ex. B at 116:6-18) Plaintiff's deposition testimony fails to create a genuine issue of material fact as to whether Armstrong's products were a substantial factor in causing his injuries, as required under maritime law. *See Lindstrom*, 424 F.3d at 492. Accordingly, the court recommends granting Armstrong's motion for summary judgment.

## E. Crosby Valve LLC

The court recommends granting Crosby's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Crosby product was a substantial factor in causing Mr. Johansen's injuries. Mr. Johansen named Crosby as a valve manufacturer he was exposed to generally during his career. (D.I. 144, Ex. B at 63:4-9) He could not recall, however, whether the valves were spring-loaded or open-body. (*Id.*, Ex. A at 194:2-9) Mr. Johansen testified:

Q:    Is there anything specific that you can tell me about a Crosby valve regarding how it's calibrated?

A:    All I remember is the name was familiar as working on valves.

Q:    So there is nothing other than the name that you recall regarding Crosby that you can give me any additional information?

A:    That is correct.

(*Id.* at 194:13-21) Crosby offers the affidavit and deposition of Captain William A. Lowell ("Captain Lowell"), a former U.S. Naval officer and engineer who personally performed and supervised the maintenance of Crosby valves aboard naval ships. (D.I. 144, Ex. C; Ex. D) Captain Lowell's testimony provides that "Crosby did not design, manufacture, supply or sell safety valves that utilized asbestos-containing internal components such as gaskets or packing." (*Id.*, Ex. C at ¶ 18) Plaintiff's deposition testimony fails to create a material issue of fact as to whether Crosby's products were a substantial factor in causing his injuries, as required under maritime law and Washington law. Plaintiff has not responded to this motion so there is no evidence from the record provided to the court which would create a dispute of material fact in this instance. Consequently, the court recommends granting Crosby's motion for summary judgment.

## F. Flowserve U.S., Inc.

The court recommends granting Flowserve's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Vogt product was a substantial factor in causing Mr. Johansen's injuries. Mr. Johansen named Vogt as a valve manufacturer whose products he encountered throughout his career. (D.I. 155, Ex. A at 63:4-9; Ex. B at 78:23-79:3) Despite this identification, Mr. Johansen could not specify where or when he was exposed to Vogt valves or Vogt valves' size, type, application, maintenance history, or age. (*Id.*, Ex. C at 227:10-15, 227:25-228:15) Additionally, Mr. Johansen could not recall the brand name or manufacturer of any gasket or packing material that may have been used in connection with Vogt valves. (*Id.* at 228:16-229:1) Plaintiff's testimony fails to show that Vogt products were a substantial factor in causing his injury, as required under maritime law and Washington law. As such, the court recommends granting Flowserve's motion for summary judgment.

## G. FMC Corporation

The court recommends granting FMC's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a FMC product was a substantial factor in causing Mr. Johansen's injuries. Mr. Johansen testified he remembered a list of pump manufacturers, which included Chicago Pumps, throughout his career. (D.I. 150, Ex. B at 79:4-12) Despite this identification, Mr. Johansen could not identify where he had seen a Chicago pump. (*Id.*, Ex. C at 222:23-223:2) Furthermore, Mr. Johansen could not describe the physical attributes, maintenance history, or application of Chicago pumps. (*Id.* at 223:3-9, 223:23-224:3) He could not recall what work he performed nor how often he was exposed to Chicago pumps. (*Id.* at 223:10-22, 224:12-16) Finally, he could not recall if the Chicago pump had a flange. (*Id.*

at 224:7-11) Plaintiff's deposition testimony fails to create a material issue of fact as to whether FMC's products were a substantial factor in causing his injuries, as required under maritime and Washington law. Therefore, the court recommends granting FMC's motion for summary judgment.

## H. Gardner Denver, Inc.

The court recommends granting Gardner Denver's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Gardner Denver product was a substantial factor in causing Mr. Johansen's injuries. Mr. Johansen named Gardner Denver as a manufacturer of pumps he had encountered during his career. (D.I. 142, Ex. A at 95:3-17) Mr. Johansen could not describe where he encountered Gardner Denver pumps, the work he performed on Gardner Denver pumps, the frequency with which he worked on Gardner Denver pumps, or what substance flowed through Gardner Denver pumps. (*Id.*, Ex. B at 225:2-5, 225:11-14, 225:24-226:7) Furthermore, he could not describe the model or serial number, size, color, type, or maintenance history of Gardner Denver pumps. (*Id.* at 225:6-10, 225:15-23, 226:8-11) Plaintiff's deposition testimony fails to create a material issue of fact as to whether Gardner Denver's products were a substantial factor in causing his injuries. Thus, the court recommends granting Gardner Denver's motion for summary judgment.

## I. Jenkins Bros.

The court recommends granting Jenkins Bros.'s motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Jenkins Bros. product was a substantial factor in causing Mr. Johansen's injuries. Mr. Johansen identified Jenkins Bros. as a manufacturer of valves he worked with during his career. (D.I. 164, Ex. A at 63:4-9) Mr. Johansen admitted that there was nothing that distinguished Jenkins valves from other valves that

22

he encountered. (*Id.*, Ex. B at 256:22-257:1) Plaintiff's deposition testimony fails to create a material issue of fact as to whether Jenkins Bros.'s products were a substantial factor in causing his injuries, as required under maritime and Washington law. Therefore, the court recommends granting Jenkins Bros.'s motion for summary judgment.

## J. Kunkle Industries, Inc.

The court recommends granting Kunkle's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Kunkle product was a substantial factor in causing Mr. Johansen's injuries. Mr. Johansen identified Kunkle as a manufacturer of valves he worked with during his career. (D.I. 148, Ex. B at 63:4-9) However, Mr. Johansen could not provide any information regarding the size, type, or location of any Kunkle valves to which he was exposed. (*Id.*, Ex. A at 195:20-24) Plaintiff's deposition testimony fails to create a material issue of fact as to whether Kunkle's products were a substantial factor in causing his injuries, as required under maritime and Washington law. As such, the court recommends granting Kunkle's motion for summary judgment.

## K. Nash Engineering Holdings LLC

The court recommends granting Nash's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Nash product was a substantial factor in causing Mr. Johansen's injuries. Nash was one of several pump manufacturers that Mr. Johansen generally recalled. (D.I. 168, Ex. A at 95:12-17) Mr. Johansen conceded that he could not recall where he encountered a Nash pump, what substance flowed through a Nash pump, or specific work he performed on a Nash pump. (*Id.*, Ex. D at 15:7-9, 16:5-7, 16:20-17:1) Furthermore, Mr. Johansen could not identify a model number, serial number, color, material, dimensions, weight, type, maintenance history, or age of any Nash pump. (*Id.* at 15:10-16:7,

23

16:13-19) He was unable to describe any of Nash pumps' distinguishing features. (*Id.* at 16:8-12) Finally, Mr. Johansen testified that he did not know the brand name or manufacturer of any gasket or packing materials that he may have used in connection with a Nash pump. (*Id.* at 17:2-11) Plaintiff's deposition testimony fails to create a material issue of fact as to whether Nash's products were a substantial factor in causing his injuries, as required under maritime and Washington law. Therefore, the court recommends granting Nash's motion for summary judgment.

## L. Neles-Jamesbury, Inc.

The court recommends granting Neles-Jamesbury's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Neles-Jamesbury product was a substantial factor in causing Mr. Johansen's injuries. Mr. Johansen identified Neles-Jamesbury as one of many valve manufacturers whose products he generally recalled. (D.I. 157, Ex. C at 78:23-79:3) Mr. Johansen admitted he could not remember a specific worksite in which he encountered Neles-Jamesbury valves, a specific work performed on Neles-Jamesbury valves, or whether Neles-Jamesbury valves had a level or wheel handle. (*Id.*, Ex. D at 252:15-19, 253:24-254:2, 255:10-16) Furthermore, he could not recall the age, maintenance history, type, material, size, or color of Neles-Jamesbury valves. (*Id.* at 253:7-23) When asked how he could distinguish Neles-Jamesbury valves from other valves, Mr. Johansen responded that "[i]t probably had a name on the casting or some kind of designation on the casting." (*Id.* at 254:3-8) However, when questioned further, Mr. Johansen was unable to recall how the lettering appeared on a Neles-Jamesbury valve, the color of the lettering, or how the name was spelled. (*Id.* at 254:16-24) Plaintiff's deposition testimony fails to create a material issue of fact as to whether Neles-Jamesbury's products were a substantial factor in causing his injuries, as required

under maritime and Washington law. As such, the court recommends granting Neles-Jamesbury's motion for summary judgment.

## M. Red-White Valve Corp.

The court recommends granting Red-White's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Red-White product was a substantial factor in causing Mr. Johansen's injuries. Mr. Johansen recognized Red-White as a manufacturer of valves to which he was exposed. (D.I. 171, Ex. 1 at 78:23-79:3) Mr. Johansen conceded that he would not be able to say which valves he worked with most. (*Id.* at 169:19-170:1) He also was unable to describe the size, shape, model number, valve material, or substance that flowed through any particular valve. (*Id.* at 170:2-23) Plaintiff has failed to provide evidence that Red-White's products were a substantial factor in causing his injuries, as required under maritime and Washington law. Therefore, the court recommends granting Red-White's motion for summary judgment.

## N. Warren Pumps, LLC

The court recommends granting Warren's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Warren product was a substantial factor in causing Mr. Johansen's injuries. Mr. Johansen spoke generally regarding his inability to place any pump at any of his worksites or describe any pumps. (D.I. 160, Ex. A at 118:17-25, 142:20-24) Plaintiff has failed to provide evidence that Warren's products were a substantial factor in causing his injuries, as required under maritime and Washington law. Thus, the court recommends granting Warren's motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, and as addressed in the chart *infra*, the court recommends

granting defendants' motions for summary judgment.

| Defendant | Motion for Summary Judgment |
|-----------|----------------------------|
| Air & Liquid Systems Corporation | GRANT |
| Anchor/Darling Valve Company | GRANT |
| Atwood & Morrill Co. | GRANT |
| Armstrong International, Inc. | GRANT |
| Crosby Valve LLC | GRANT |
| Flowserve U.S., Inc. | GRANT |
| FMC Corporation | GRANT |
| Gardner Denver, Inc. | GRANT |
| Jenkins Bros. | GRANT |
| Kunkle Industries, Inc. | GRANT |
| Nash Engineering Holdings LLC | GRANT |
| Neles-Jamesbury, Inc. | GRANT |
| Red-White Valve Corp. | GRANT |
| Warren Pumps, LLC | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed.

R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages

each. The failure of a party to object to legal conclusions may result in the loss of the right to de

novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir.

2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: January 23 , 2019

Sherry R. Fallon
United States Magistrate Judge